MARCUM et al., Appellants,

v.

TALAWANDA CITY SCHOOLS et al., Appellees.

[Cite as *Marcum v. Talawanda City Schools* (1996), 108 Ohio App.3d 412.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–05–093.

Decided Jan. 8, 1996.

*Mark J. Ross* and *James J. Andrioff,* for appellants.

*Tailer, Ruttle & Walden* and *Christine D. Tailer,* for appellees.

---

POWELL, Judge.

Plaintiffs-appellants, S. Douglas Marcum and his wife, Pamela Marcum, appeal an order of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Talawanda City Schools ("Talawanda"), Phillip Cagwin, and Dennis Leone.

In October 1993, appellants' son, Jacob Marcum, was a sixth-grader enrolled at Talawanda Middle School in Oxford, Ohio. On October 20, 1993, Jacob remained after school to attend a student council meeting during which the students were supposed to make posters. The meeting was held in the classroom of the school's student council advisor, Theresa Abrams. The meeting was not authorized by the school's administration. Abrams gathered the students together and instructed them to work on the posters. Abrams then left the building to attend a faculty meeting at Talawanda High School. Abrams told the students that she would be back "soon."

Once Abrams left the room, Jacob and the other students began to misbehave. The students rummaged through Abrams's desk, threw "tape balls," and fought with yardsticks. Two of the female students in the room eventually began to tickle Jacob. The girls grabbed Jacob by the arms and feet and lifted him into the air as if they intended to swing him back and forth. However, one of the girls lost her grip on Jacob's arms and dropped him on his head. The girls kicked Jacob and stepped on his back.

The other students then dragged Jacob to the back of the classroom. One student held Jacob down on the floor by sitting on a chair he had placed over Jacob's chest. The other students taped Jacob's wrists together and placed a piece of tape over Jacob's mouth. The students also kicked Jacob in the ribs, collarbone, and armpit.[1]

At approximately 3:00 p.m., appellant Pamela Marcum entered Abrams's classroom. Pamela Marcum freed Jacob and then took him to the school's front office where she demanded to see the vice-principal, Michael Pavloff. School employees told Pamela Marcum that Pavloff had already left for the day, but that the school's principal, appellee Phillip Cagwin, was attending a faculty meeting in the school's library. Pamela Marcum took Jacob to the library, where she briefly spoke with Cagwin. Cagwin asked for the names of the students who committed

---

1. Jacob was later treated for minor soft-tissue injuries.

the assault. Jacob did not give Cagwin the students' names because he did not want to at that time. Cagwin told Jacob and Pamela Marcum that he was unable to take any disciplinary action without the students' names and returned to the meeting.

Pamela Marcum then took Jacob to see appellee Dennis Leone, the Superintendent of Talawanda City Schools. Leone assured Pamela Marcum that he would look into the matter. Leone also asked whether Jacob had done anything to provoke the assault.

Appellant Douglas Marcum later met with Leone to request that the school provide psychological counselling for Jacob. No such counselling was ever provided. Cagwin instead required all of the students involved in the incident, including Jacob, to do four hours of community service. Jacob never completed any of the community service because appellants considered it to be inappropriate. Appellants subsequently withdrew Jacob from Talawanda Middle School.

On June 14, 1994, appellants brought suit against appellees.[2] Appellants' complaint alleged that Talawanda was liable for Jacob's injuries because Abrams had failed to supervise the students who committed the assault. The complaint also alleged that Talawanda was liable for the manner in which Cagwin and Leone responded to the assault. Appellees moved for summary judgment pursuant to Civ.R. 56(C). The trial court granted appellees' motion for summary judgment on April 12, 1995. The trial court found that appellees were immune from liability under R.C. Chapter 2744. Appellants now appeal, setting forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred in sustaining defendants-appellees' motion for summary judgment on plaintiffs-appellants' first cause of action as defendants-appellees are not immune from liability under the provisions of R.C. Chapter 2744.

"Assignment of Error No. 2:

"The trial court erred in sustaining defendants-appellees' motion for summary judgment on plaintiffs-appellants' second cause of action as defendants-appellees are not immune from liability under the provisions of R.C. Chapter 2744."

Civ.R. 56(C) specifically provides that summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds construing the evidence in a light most favorable to the nonmoving party could reach but one

---

2. Appellants' complaint also named Theresa Abrams as a defendant. Appellants later voluntarily dismissed their claim against Abrams pursuant to Civ.R. 41(A).

conclusion, which is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884.

In their first assignment of error, appellants contend that the trial court erred in finding that Talawanda is immune from liability under R.C. Chapter 2744 for Abrams's failure to supervise the students who assaulted Jacob. R.C. 2744.02(A) provides that as a general rule a political subdivision is not liable in tort for injuries to persons or property that occur in connection with the performance of a governmental or proprietary function. *Redd v. Springfield Twp. School Dist.* (1993), 91 Ohio App.3d 88, 91, 631 N.E.2d 1076, 1078. This general rule of nonliability is subject to certain exceptions enumerated in R.C. 2744.02(B), which provides, in part, as follows:

"(4) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."

R.C. 2744.01(C)(2)(c) defines a governmental function as "[t]he provision of a system of public education." The record indicates that Jacob Marcum was injured while attending a student council meeting at Talawanda Middle School as a result of Abrams's decision to leave the students in her care unattended. Therefore, we conclude that this case falls squarely within the exception to the general rule of nonliability established by R.C. 2744.02(B)(4).

This conclusion, however, does not end our analysis of whether Talawanda is immune from liability under R.C. Chapter 2744. The exceptions to the general rule of nonliability listed in R.C. 2744.02(B) are themselves subject to certain exceptions enumerated in R.C. 2744.03(A), which provides, in part, as follows:

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with *malicious purpose, in bad faith, or in a wanton or reckless manner.*"

Appellants argue that Talawanda is liable for the injuries Jacob sustained during the assault because Abrams's decision to leave the students unattended was nondiscretionary. We disagree. A classroom teacher has wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in his or her care. *Banchich v. Port Clinton*

*Pub. School Dist.* (1989), 64 Ohio App.3d 376, 378, 581 N.E.2d 1103, 1104; *Steele v. Auburn Vocational School Dist.* (1994), 104 Ohio App.3d 204, 661 N.E.2d 767.

█ Our review of the record indicates that Abrams began the student council meeting by gathering the students in her classroom and explaining that the purpose of the meeting was to make posters. Abrams gave the students markers, poster board, and other necessary materials. Abrams started the students working on the posters and then told them that she would be leaving to attend a faculty meeting. Abrams also told the students to stay in the classroom and be quiet and that she would be back "soon." Abrams believed that it was safe to leave the students unattended because all of the children had previously "worked on their own and done well" and because they were "very responsible students."

Construing these facts in the light most favorable to appellants, we believe that reasonable minds could only conclude that Abrams's decision to leave the students unattended was within the scope of her discretionary authority pursuant to R.C. 2744.03(A)(5). Therefore, the trial court properly found that Talawanda is immune from liability. Appellants' first assignment of error is overruled.

In their second assignment of error, appellants contend that Talawanda is liable for the manner in which Cagwin and Leone responded to the assault on Jacob. R.C. 2744.03(A)(3) provides as follows:

"The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

█ The record shows that Cagwin first learned of the assault on Jacob when he was confronted by Pamela Marcum on the afternoon of October 20, 1993. Cagwin investigated the incident the following day and learned the names of the students involved in the assault. Cagwin met with all of the students both individually and as a group. Cagwin punished the students involved in the assault by requiring them to do four hours of community service. Cagwin also assigned Jacob to do four hours of community service because of his role in the misbehavior that preceded the assault.

The record also shows that Leone met with appellant Pamela Marcum immediately after the assault. Leone promised to investigate the incident and asked whether Jacob had done anything to provoke the students to attack him. Leone later met with appellant Douglas Marcum for approximately two hours to discuss the possibility of counselling for Jacob. Leone suggested that Jacob should

speak with the school's guidance counsellor, but did not offer to provide any other type of counselling.

Having carefully reviewed these facts, we believe that reasonable minds could only conclude that both Cagwin and Leone acted well within the scope of the policy-making, planning, and enforcement powers attendant to their offices when determining how to deal with the assault on Jacob. Accordingly, the trial court properly found that Talawanda is immune from liability under R.C. 2744.03(A)(3).

Appellants also contend that Cagwin and Leone are personally liable because they responded to appellants' complaints about the assault on Jacob in bad faith and in a reckless and wanton manner. R.C. 2744.04(A)(6) provides as follows:

"In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

" * * *

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

A public official acts in bad faith for purposes of R.C. 2744.03(A)(6) where there is a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363, 367. Likewise, recklessness refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of harm and that this risk is substantially greater than that necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 707–708; *Piro v. Franklin Township* (1995), 102 Ohio App.3d 130, 139, 656 N.E.2d 1035, 1040–1041.

As we have already noted, the record indicates that both Cagwin and Leone acted well within the scope of their discretionary authority in determining how to respond to the assault on Jacob. There is simply no evidence in this case that either Cagwin or Leone acted with a dishonest purpose, ulterior motive, or ill will toward Jacob or appellants. Similarly, there is no evidence of any reckless or wanton conduct by either Cagwin or Leone. Accordingly, the trial court properly found that both Cagwin and Leone are immune from liability under R.C.

2744.03(A)(6).  Appellants' second assignment of error is overruled.  The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

WALSH, P.J., and KOEHLER, J., concur.