OPINION
Defendants-appellants, Franklin County Sheriff's Department ("the Sheriff's Office") and Franklin County Prosecutor's Office ("the Prosecutor's Office") appeal a decision of the Butler County Court of Common Pleas which denied their motion for summary judgment against plaintiff-appellee, Jamie Jo Jones. We reverse the trial court's decision.
On March 14, 1995, a Whitehall, Ohio police officer arrested two women in relation to a shoplifting offense. One of the two suspects identified herself as Jamie Jo Jones and provided the officer with a social security number ("SSN"), date of birth ("DOB"), and a local address in Columbus, Ohio. The officer ran the information through the Law Enforcement Automated Data System ("LEADS") which verified that the SSN and DOB belonged to a Jamie Jo Jones.[1] The suspect was then transported to the Whitehall police station where she was charged with theft and fingerprinted.
A Franklin County Grand Jury issued an indictment against Jamie Jo Jones. The arraignment was scheduled for August 16, 1995. When Jamie Jo Jones failed to appear at the arraignment, the court issued a capias for her arrest. The capias was filed with the clerk of courts on August 17, 1995.
On September 18, 1995, Jamie Jo Jones, n/k/a Jamie Mullins and hereafter referred to as "appellee," pursuant to the August 16, 1995 capias, was arrested by the City of Fairfield, Ohio Police Department. Appellee informed the police that she was not the person identified in a capias but that, given the address listed on the capias and the physical description, she suspected that the police were actually looking for her sister, Rebecca Sue McCoy ("McCoy"). Additionally, appellee's fingerprints did not match those of the March 14, 1995 theft suspect. Appellee was released due to a lack of evidence.
Appellee was arrested again on October 23, 1995 by the City of Hamilton, Ohio Police Department, pursuant to the capias and its appearance in the LEADS system. Appellee informed the officers of the identification error. Officers of the Hamilton Police Department then contacted the Franklin County Sheriff for fingerprints and photographs. Appellee was eventually released due to lack of evidence.
Appellee was next arrested on May 2, 1996 in Butler County, Ohio. Because appellee's name, DOB, and SSN matched that of the August 16, 1995 capias, Corporal Gordon Johnson of the Franklin County Sheriff's Office traveled to Butler County to return her to Franklin County. During her transport to Franklin County, appellee once again informed officials of the misidentification. Once in Franklin County, Johnson confirmed that appellee's fingerprints and photograph did not match those of the March 14, 1995 theft suspect. Johnson then informed his supervisor that it appeared that he had returned the wrong person to Franklin County. Johnson was ordered to immediately release appellee and further ordered not to return anyone pursuant to the August 16, 1995 capias until a fingerprint comparison produced a match.
Subsequently, the record before this court indicates that appellee was arrested, or otherwise detained, on the following dates: November 11, 1996; December 9, 1996; April 21, 1997; June 23, 1997; and September 3, 1997. In each of these incidents, because appellee's fingerprints did not match those of the March 14, 1995 theft suspect, appellee was released. In all but one of these situations, the Franklin County Sheriff's Office was informed of the identification error and was provided with appellee's fingerprints and photograph.
On May 1, 1997, Katheryn Kawalec of the Franklin County Prosecutor's Office received a telephone call in which she was informed that the name, DOB and SSN of Jamie Jo Jones, as identified in the August 16, 1995 capias, was incorrect. That same day, Kawalec contacted assistant prosecuting attorney Robin Rader about the alleged error. Rader then began an investigation that included telephoning the Whitehall Police Department and the Franklin County Sheriff's Office. On May 9, 1997, Rader was informed that the theft suspect of the March 14, 1995 incident was actually Rebecca Sue McCoy who had used several different aliases, as well as various DOBs and SSNs. Subsequent fingerprint comparisons between McCoy's previous convictions and the March 14, 1995 arrest confirmed that they did not match appellee's fingerprints. On June 25, 1997, Rader filed a motion to amend the indictment to reflect the correct name, DOB, and SSN of McCoy. On June 27, 1997, Kawalec filed a motion with the clerk of courts to recall the August 16, 1995 capias and filed a corrected capias with McCoy's name, correct DOB and SSN.
Appellee filed suit on December 23, 1997 naming the Franklin County Sheriff's Office, the Franklin County Board of Commissioners, the Franklin County Clerk of Courts, the Franklin County Prosecutor's Office, and two unknown individuals as defendants. Appellee claimed damages resulting from the arrests and detentions. Specifically, appellee alleged causes of actions for false imprisonment, false arrest, malicious prosecution, defamation, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of Section 1983, Title 42, U.S. Code.
On September 15, 1998, all defendants filed a motion for summary judgment on all of the claims. In their motion, the defendants alleged that they were entitled to judgment as a matter of law based upon the doctrine of sovereign immunity as codified in The Political Subdivision Tort Liability Act, R.C. Chapter 2744. Appellee timely filed her response.
On December 1, 1998, the trial court journalized an entry in which it overruled in part and granted in part the motion for summary judgment. Specifically, the trial court found that "no genuine issue of material fact existed with regard to the liability of the Franklin County Board of Commissioners or the Franklin County Clerk of Courts. However, finding that "R.C.2744.03(A)(6) sets forth several exceptions to [the] general grant of immunity to political subdivisions and their employees," the trial court found that material issues of fact existed as to whether the Sheriff's Office and the Prosecutor's Office had acted in a reckless manner toward appellee. The Sheriff's Office and the Prosecutor's Office, collectively hereinafter "appellants," now appeal, limiting their appeal to appellee's state law claims only. Appellants assign two assignments of error for our review.
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANTS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT AS DEFENDANTS-APPELLANTS ARE POLITICAL SUBDIVISIONS AS DEFINED BY OHIO REVISED CODE CHAPTER 2744 AND THUS ARE NOT LIABLE FOR DAMAGES IN A CIVIL ACTION UNLESS CHAPTER 2744 PROVIDES OTHERWISE.
 THE TRIAL COURT ERRED IN APPLYING OHIO REVISED CODE SECTION 2744.03(A)(6) AS THAT SECTION GOVERNS IMMUNITY OF EMPLOYEES OF POLITICAL SUBDIVISIONS AND NOT POLITICAL SUBDIVISIONS THEMSELVES.
Because both assignments of error address the trial court's decision denying appellants' motion for summary judgment on the basis of sovereign immunity, we shall address both assignments of error together.
Summary judgment is appropriately rendered when no genuine issue as to material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317. This court shall review the trial court's determination on appellants' motion for summary judgmentde novo. Brown v. Scioto Cty. Bd. of Commrs.(1993), 87 Ohio App.3d 704.
The Supreme Court of Ohio has recently had occasion to examine The Political Subdivision Tort Liability Act as codified in R.C. Chapter 2744. R.C. 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability.
 First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions, are not liable in damages for the personal injuries or death of a person. R.C. 2744.02(A)(1) provides:
 For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. (Emphasis added.)
 The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms subject to the five exceptions to immunity listed in R.C. 2744.02(B). Hill v. Urbana (1997), 79 Ohio St.3d 130. Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply. R.C. 2744.02(B)(1)-(5). Finally, under the third tier of the analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.
 Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28. Thus, our threshold question is whether the general grant of immunity, as established by R.C. 2744.02(A)(1), applies to appellants' actions.
It is clear from a reading of R.C. 2744.01(F) that both the Sheriff's Office and the Prosecutor's Office are political subdivisions as that term is defined.[2] The actions at issue in the instant matter, and to which immunity may apply, are essentially the issuance, execution, and eventual failure to withdraw, the August 16, 1995 capias. A proper analysis of the question before this court requires a classification of these actions as either "governmental functions" or "proprietary functions." Blankenship v. Enright (1990), 67 Ohio App.3d 303.
The statutory definitions of those mutually exclusive terms are set out in R.C. 2744.01(C) and 2744.01(G), respectively. R.C.2744.01(C)(1) provides:
 "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
Subsection (C)(2)(a)-(w) lists a series of specific governmental functions, some of which include: the provision or nonprovision of police; the power to preserve peace; judicial, quasi-judicial, prosecutorial, legislative and quasi-legislative functions; and the enforcement or nonperformance of any law.
In contrast, R.C. 2744.01(G)(1) provides:
 "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or satisfies both of the following:
 (a) The function is not one described in division(C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 (b) The function is one that promotes or preserves the public peace, health safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
Subsection (G)(2)(a)-(e) lists a series of specific proprietary functions, some of which include: the maintenance of a hospital; the establishment, maintenance and operation of a utility company; the establishment, maintenance and operation of a public transportation system; and the establishment, maintenance and operation of a public stadium or civic arena.
Although we find neither list presented exhaustive, we note that the issuance, execution, and eventual failure to withdraw a capias would be markedly different functions from those listed within R.C. 2744.01(G). Additionally, we find that the issuance, execution, and eventual failure to withdraw a capias are not functions which are "customarily engaged in by nongovernmental persons." Therefore, such actions are not proprietary functions as such functions are defined, but rather are governmental functions. See Wynn v. Butler Cty. Sheriff's Department (Mar. 22, 1999), Butler App. No. CA98-08-175, unreported, at 6, citing Twinev. Franklin Cty. Sheriff's Department (1990), 68 Ohio App.3d 51,55 (governmental immunity applied to sheriff's office service and execution of order of detention); Blankenship v. Enright (1990),67 Ohio App.3d 303, 311 (clerk of court's failure to withdraw a capias was held not to be a "proprietary act" for which the county could be held liable). Because such actions are governmental functions, the general grant of political subdivision immunity, as established under R.C. 2744.02(A)(1), is indeed applicable to the case before us.
Next, because the general grant of immunity afforded a political subdivision is not absolute, we proceed to the second tier of the analysis to consider whether one the five express exceptions to immunity contained in R.C. 2744.02(B) is applicable. R.C. 2744.02(B) provides that political subdivisions are liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by:
 (1) * * * the negligent operation of any motor vehicle by their employees upon public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. * * *
 (2) * * * the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 (3) * * * their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair * * *.
 (4) * * * the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.
 (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *.
A review of the record before this court indicates that appellee's alleged injuries were not caused by the negligent operation of any motor vehicle by a political subdivision's employee and therefore, subsection (B)(1) does not impose liability upon appellants. In her brief, appellee contends that subsection (B)(2) imposes liability upon appellants because their actions (i.e., entry and removal of information contained within the LEADS system) were proprietary in nature. However, pursuant to the discussion above, the issuance, execution, and eventual failure to withdraw the capias are governmental rather than proprietary functions. We therefore are unpersuaded by appellee's contention and find that subsection (B)(2) fails to impose liability upon appellants. Furthermore, appellee's alleged injuries were not caused by appellants' negligent failure to keep public roads, highways or streets in full repair. Accordingly, we find that subsection (B)(3) also fails to impose liability upon appellants.
In her brief, appellee contends that R.C. 2744.02(B)(4) operates to divest appellants of immunity. Specifically, appellee contends that because the negligent entry and removal of information contained within the LEADS system occurred "within or on the grounds of buildings that are used in connection with the performance of a governmental function," liability should be imposed. We begin our analysis by noting that this matter is somewhat complicated by the fact that the first five of appellee's detentions and/or arrests occurred while the pre-tort reform version of R.C. 2744.02(B)(4) was in effect, while the last three of appellee's detentions and/or arrests occurred after the post-tort reform version of R.C. 2744.02(B)(4) became effective.[3] Next, we note that upon a through examination of the case law, our analysis is further complicated by the fact that there are two ways to interpret R.C. 2744.02(B)(4). Some appellate courts have interpreted this subsection narrowly. These appellate courts read this subsection as creating a government building premises liability; that is to say that liability is imposed only when the negligence which occurs is in connection with the physical maintenance of governmental property, or because of some "physical defect" in the property.[4] Other appellate courts have interpreted R.C. 2744.02(B)(4) more broadly; they have imposed liability upon a showing that, due to some act of negligence, an individual has suffered injury within or on the grounds of a building that is used in connection to a governmental function.[5]
The Ohio Supreme Court may, in fact, clarify interpretations of this subsection as, in February of 1999, it accepted a motion to certify a conflict between the two lines of cases discussed above[6]. However until such time, we are inclined to agree with those appellate courts which have narrowly interpreted R.C.2744.02(B)(4) and impose liability only to negligence which occurs in connection with the physical maintenance of governmental property. Because appellee's injuries did not arise out of the negligent physical maintenance of governmental property, we find, as a matter of law, the exception set forth with in R.C.2744.02(B)(4) does not operate to divest appellants of immunity.[7] Additionally, we posit that our determination of this issue is bolstered by the Ohio Legislature's recent addition of the requirement that an individual's injury be the result of "physical defects within or on the grounds" of government buildings, in the post-tort reform version of R.C. 2744.02(B)(4).Tijerina v. Bd. of Ed. of Fremont, Ohio (Sept. 30, 1998), Sandusky App. No. S-98-010, unreported, at 17. Accordingly, we find appellee's contention, that R.C. 2744.02(B)(4) operates to impose liability upon appellants unpersuasive.
Finally, we examine the express exception to political subdivision liability, contained within R.C. 2744.02(B)(5), and note that neither appellant is subject to liability as the result of an express section of the Revised Code.
In conclusion, we find that none of the express exceptions contained within R.C. 2744.02(B)(1)-(5) operate to impose liability upon appellants. It is therefore unnecessary for this court to proceed to the third tier of analysis and determine whether immunity can be reinstated as a result of the political subdivision's assertion of one of the defenses contained in R.C.2744.03. Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28.
Appellee contends in her brief that R.C. 2744.03(A)(5) provides an independent basis for imposing liability upon appellants.[8] However, we reject this contention. In bothCater and Hill v. Urbana (1997), 79 Ohio St.3d 130, a similar argument was made. However, the Supreme Court has unequivocally stated that "R.C. 2744.03(A)(5) is a defense to liability," and "it cannot be used to establish liability." Cater at 32, citingHill at 135, (emphasis added). Thus, we are once again unpersuaded by appellee's contention.
One final note. The trial court in the instant matter relied upon R.C. 2744.03(A)(6)[9] as setting "forth several exceptions to [the] general grant of immunity to political subdivisions and their employees." However, as discussed within this opinion, R.C. 2744.03 does not set forth any independent exceptions to political subdivision immunity. Rather, that section operates to reinstate immunity for political subdivisions, once liability has been established, through a series of defenses. Consequently, we cannot agree with the trial court's imposition of liability pursuant to R.C. 2744.03. Additionally, we note that R.C. 2744.03(A)(6), by its very terms, operates to impose liability upon individual employees of a political subdivision and not upon political subdivisions. R.C. 2744.03(A)(6) "therefore has no effect on the liability of [political subdivisions]." Fabreyv. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 356.[10]
Accordingly, upon review we find that appellants' assignments of error have merit. The trial court erred in overruling appellants' motion for summary judgment because appellants are political subdivisions entitled to immunity, and the trial court further erred when it applied R.C. 2744.03(A)(6) to impose liability upon appellants. Both assignments of error are therefore sustained.
Judgment reversed.
POWELL, P.J., and WALSH, J., concur.
[1] The woman arrested falsified her identity and was not, in fact, Jamie Jo Jones, but rather her sister, Rebecca Sue McCoy.
[2] A "political subdivision" is defined as a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. R.C. 2744.01(F).
[3] The post-tort reform version of R.C. 2744.02(B)(4), which became effective January 17, 1997, adds the requirement that the injury be the result of "physical defects within or on the grounds" of government buildings.
[4] See Doe v. Jefferson Area Local School District (1994),97 Ohio App.3d 11, 13; Cook v. Hubbard Exempted Village Bd. of Ed.
(1996), 116 Ohio App.3d 564, 570; Hall v. Fort Frye Local SchoolDistrict Bd. of Ed. (1996), 111 Ohio App.3d 690, 696; Zellman v.Kenston Bd. of Ed. (1991), 71 Ohio App.3d 287, 291.
[5] See Hubbard v. Canton City School Bd. of Ed. (Oct. 26, 1998), Stark App. No. 1998CA00089, unreported, at 4-5; Marcum v.Talawanda City Schools (1996), 108 Ohio App.3d 412, 416; Williamsv. Columbus Board of Ed. (1992), 82 Ohio App.3d 18, 22.
[6] See Hubbard v. Canton City School Bd. of Ed. (1999),84 Ohio St.3d 1486.
[7] In making this determination, we note that in Marcum v.Talawanda City Schools (1996), 108 Ohio App.3d 412, this court interpreted R.C. 2744.02(B)(4), more broadly, holding that a student's injury suffered on school property as a result of a teacher's negligence fell "squarely within the exception to the general rule of nonliability * * *." Id. at 416. However, upon further consideration of this issue, we find that the proper interpretation of R.C. 2744.02(B)(4) is now as set forth in this opinion.
[8] R.C. 2744.03(A)(5) provides:
 The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion * * * unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
[9] R.C. 2444.03(A)(6) provides:
 In addition to any immunity or defense referred to in division (A)(7) of this section * * * the employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside of the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code. * * *.
[10] Unfortunately, because appellee never identified the two unknown employees of the appellants she named in her complaint, and because she never presented any evidence from which reasonable minds could find that an employee of the appellants acted outside the scope of their employment or with malicious purpose, in bad faith or in a wanton or reckless manner, the exception to immunity found within R.C. 2744.03(A)(6) is inapplicable to the matter before us.