OPINION
{¶ 1} Appellants, Jeffrey Dana Elston ("Jeffrey Elston"), and his parents, Pamela and Jeffrey David Elston ("the Elstons"), appeal from the June 24, 2004 judgment entry of the Trumbull County Court of Common Pleas, granting the motion for summary judgment of appellee, Howland Local Schools.
 {¶ 2} On May 2, 2003, appellants filed a complaint for personal injuries against appellee, Thomas Eschman ("Eschman"), and John Doe Independent Contractor, alleging failure to supervise and negligence.[1]
On June 30, 2003, appellee and Eschman filed an answer. On February 11, 2004, appellants filed an amended complaint against appellee.[2] Also, on February 11, 2004, appellants and appellee filed a joint stipulation that Eschman was acting within the course and scope of his employment. Appellants filed a notice of partial dismissal pursuant to Civ. R. 41(A), indicating that Eschman was voluntarily dismissed from the instant matter, and that their claims against appellee would continue. On February 20, 2004, appellee filed an answer to appellants' amended complaint.
 {¶ 3} On May 17, 2004, appellee filed a motion for summary judgment pursuant to Civ. R. 56. On May 28, 2004, appellants filed a response to appellee's motion for summary judgment. On June 7, 2004, appellee filed a reply brief in support of its motion for summary judgment.
 {¶ 4} The instant action arose from an incident that occurred on April 29, 2002, at Howland High School, in which fifteen-year-old appellant Jeffrey Elston was struck in the head by a baseball. According to appellant Jeffrey Elston's deposition, he was a freshman at Howland High School during the 2001-2002 academic year, and in February 2002, tried out for and made the freshman baseball team, which was coached by Eschman. Appellant Jeffrey Elston testified that in mid-March, the team's baseball practices were moved from the elementary school to the high school. Although appellant Jeffrey Elston began playing baseball at the age of six, he stated that he never played on a team that utilized an L-screen until he began playing for Howland.[3] Appellant Jeffrey Elston indicated that the freshman team utilized the L-screen to conduct a hitting drill called short toss. The regulation distance between the pitcher and home plate is sixty feet, six inches. Short toss is a practice drill in which a pitcher lobs a baseball to a batter from a distance of about thirty feet.
 {¶ 5} On the day of the incident, Eschman and the baseball team were to travel to Girard for a game. Because the bus was going to be late, appellant Jeffrey Elston played short toss with junior varsity player, Joe Ross ("Ross"). Prior to this occasion, appellant Jeffrey Elston stated that he had thrown behind an L-screen on about six or seven different instances, from the regulation distance of sixty feet, six inches. On appellant Jeffrey Elston's fourth or fifth pitch, Ross hit a line drive that ricocheted off the horizontal crossbar of the L-screen and collided with the right side of appellant Jeffrey Elston's head.
 {¶ 6} According to appellant Jeffrey Elston, he immediately sought ice for his head and later boarded the bus with his team. After arriving at the field in Girard, the Elstons decided to transport their son to Trumbull Memorial Hospital in Warren, Ohio. Appellant Jeffrey Elston was ultimately taken by helicopter to Rainbow Children's Hospital in Cleveland, Ohio, for brain surgery. Four titanium plates and screws were permanently implanted in appellant Jeffrey Elston's head.
 {¶ 7} Eschman testified in his deposition that he became employed by appellee in 1972 as a teacher and coach. In 1973, Eschman became the head baseball coach for Howland High School and held that position for fourteen years before leaving appellee in 1987. Eschman returned to coaching for appellee in 2000, and again became the head baseball coach in 2002. Eschman indicated that he first used the L-screen in 1971, when he coached baseball at John F. Kennedy High School, and continued using an L-screen ever since he came to appellee in 1972.
 {¶ 8} In March 2002, Eschman testified that the freshman baseball team began practicing in the batting cage, which was the first time that appellant Jeffrey Elston saw the L-screen in use, and began throwing from behind the L-screen. During those practices, Eschman stated that he gave instructions to the baseball team.
 {¶ 9} Eschman did not witness the incident at issue, but later saw appellant Jeffrey Elston in the locker room holding an ice pack on the side of his head. Eschman testified that appellant Jeffrey Elston spoke clearly, his eyes appeared fine, and there was no apparent swelling. Eschman asked appellant Jeffrey Elston how he felt and if he wanted to go home, and indicated that he replied that he was fine and that he wanted to play in the game.
 {¶ 10} John W. Zizzo ("Zizzo") indicated in his affidavit that he was a baseball coach and provided baseball instructions to individuals from high school to the professional level. Zizzo opined that appellee and Eschman had a duty to make every athlete wear a protective helmet in the batting cage during short toss; had a duty to instruct and demonstrate the proper way to throw behind an L-screen; had a duty to conduct the short toss drill in a manner that did not consist of athletes standing and throwing; and had a duty to require athletes to sit on a chair or kneel behind the screen.
 {¶ 11} Pursuant to its June 24, 2004 judgment entry, the trial court granted appellee's motion for summary judgment. It is from that judgment that appellants filed a timely notice of appeal and raise the following assignment of error:
 {¶ 12} "The trial court erred in sustaining [appellee's] [m]otion for [s]ummary [j]udgment."
 {¶ 13} In their sole assignment of error, appellants argue that the trial court erred in granting appellee's motion for summary judgment. Appellants posit three issues for review. In their first issue, appellants contend that the immunity provided by R.C. 2744.03(A)(3) applies only to employees of a political subdivision who exercise discretion with respect to policy-making, planning, or enforcement powers by virtue of their duties and responsibilities. In their second issue, appellants allege that in a personal injury action against a school district predicated upon vicarious liability, the immunity provided by R.C. 2744.03(A)(5) is inapplicable because it applies only to the political subdivision's exercise of judgment or discretion and not to the actions of employees of the political subdivision. In their third issue, appellants maintain that genuine issues of material fact exist as to whether Eschman acted in a wanton manner.
 {¶ 14} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 15} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385.
 {¶ 16} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that:
 {¶ 17} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ. R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 18} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ. R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ. R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 19} R.C. 2744.02(B) provides that: "[s]ubject to sections 2744.03
and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function * * *."
 {¶ 20} R.C. 2744.03(A) states in part that: "[i]n a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 21} "* * *
 {¶ 22} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 {¶ 23} "* * *
 {¶ 24} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 25} In the case at bar, because appellants' three issues are interrelated, we will address them in a consolidated fashion.
 {¶ 26} The trial court stated in its June 24, 2004 judgment entry that:
 {¶ 27} "[t]he parties concede that [appellee] herein is a political subdivision for the purposes of [R.C.] 2744. Under [R.C.] 2744.02 a subdivision would be liable for the actions of its employees in connection with a governmental or proprietary function or caused by the negligence of an employee that occurs on the grounds or buildings used in the connection with the performance of a governmental function [R.C.] 2744.02(A)(1) and [R.C.] 2744.02(A)(4). However, assuming for the purposes of this motion that there was negligence on behalf of [appellee], the [c]ourt must look to [R.C.] 2744.03 for further limitations.
 {¶ 28} "* * *
 {¶ 29} "The [c]ourt notes that [appellants] at no time alleged any malicious purpose, bad faith, wanton or reckless actions. Negligence is the only claim in this matter. The [c]ourt finds that the immunities of [R.C.] 2744.03(A) apply in this case[.]"
 {¶ 30} We disagree. The liability exceptions contained within R.C. 2744.03 must be read narrowly in favor of appellants. Hallett v. StowBd. of Educ. (1993), 89 Ohio App.3d 309, 313. The subsections of R.C. 2744.03(A) grant immunity to either the political subdivision or its employees, not both.
 {¶ 31} Pursuant to R.C. 2744.03(A)(3), as a defense or basis for immunity, appellee failed to show that Eschman's position as baseball coach involved policy-making, planning, or enforcement powers. As such, R.C. 2744.03(A)(3) is inapplicable to the instant matter.
 {¶ 32} Furthermore, appellee's reliance upon R.C. 2744.03(A)(5), and the trial court's determination that R.C. 2744.03(A)(5) is applicable here, is both misplaced and incorrect. A plain reading of R.C. 2744.03(A)(5) establishes that immunity is extended only to the acts of a political subdivision, not to the acts of its employees. Kiep v. Hamilton
(May 19, 1997), 12th Dist. No. CA96-08-158, 1997 Ohio App. LEXIS 2121, at 13-14. Therefore, the immunity conferred by R.C. 2744.03(A)(5) only relieves liability for claims based upon the exercise of judgment or discretion of the political subdivision itself. As such, because R.C. 2744.03(A)(5) does not contain any language pertaining to the actions of a political subdivision's employees, it does not apply to appellants' vicarious liability claims. Thus, appellee would be vicariously liable for appellant Jeffrey Elston's injuries based on R.C. 2744.02(B).
 {¶ 33} In addition, genuine issues of material fact exist regarding whether Eschman acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Again, appellants' expert, Zizzo, opined that Eschman breached four separate duties owed to appellant Jeffrey Elston and failed to exercise any care whatsoever toward him. First, Zizzo stressed that appellee and Eschman had a duty to make every student athlete wear a protective helmet while in the batting cage during short toss. One could reasonably assume that appellant Jeffrey Elston's injuries would not have occurred or would have been significantly lessened had he been required to wear a protective helmet. Second, Eschman never instructed appellant Jeffrey Elston on the proper use of the L-screen when it was positioned only thirty feet from home plate. Zizzo opined that Eschman breached a duty to provide proper instruction. Third, Zizzo stated that Eschman had a duty to conduct the short toss drill in a manner that did not consist of athletes standing and throwing. Fourth, Zizzo indicated that Eschman had a duty to require athletes to sit on a chair or kneel behind the screen.
 {¶ 34} The deposition testimony of appellant Jeffrey Elston and Eschman, in addition to the expert opinion of Zizzo, raise genuine issues of material fact as to whether Eschman did in fact act in a wanton or reckless manner toward appellant Jeffrey Elston by failing to exercise care for his safety. It is our position that the facts of this case raise questions best suited for a jury's determination. Appellants' three issues are with merit.
 {¶ 35} Based on Mootispaw, it was improper for the trial court to conclude that summary judgment was appropriate.
 {¶ 36} For the foregoing reasons, appellants' sole assignment of error is well-taken. The judgment of the Trumbull County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.
William M. O'Neill, J., concurs,
Donald R. Ford, P.J., dissents with Dissenting Opinion.
[1] Eschman was appellant Jeffrey Elston's baseball coach who was employed by appellee.
[2] Eschman and John Doe Independent Contractor were not named parties in appellants' amended complaint.
[3] An L-screen is a protective device in a batting cage which consists of a frame and protective net, shaped in the letter "L". The purpose of the L-screen is to protect a pitcher from being hit with a batted ball that is hit directly back at him.