314

ELSTON ET AL., APPELLEES, *v.* HOWLAND LOCAL SCHOOLS, APPELLANT.

[Cite as *Elston v. Howland Local Schools,*
113 Ohio St.3d 314, 2007-Ohio-2070.]

(Nos. 2005–1993 and 2005–2032—Submitted September
19, 2006—Decided May 16, 2007.)

O'DONNELL, J.

{¶ 1} This case is presented to us as a certified conflict between appellate jurisdictions divided over resolution of the following legal issue: "Whether a political subdivision's immunity from liability under R.C. 2744.03(A)(5) applies only to the acts of the political subdivision, and not to the acts of the employees of the political subdivision."

{¶ 2} The Howland Local School District appeals from a decision of the Trumbull County Court of Appeals, which reversed the trial court's grant of summary judgment in favor of the school district and determined that R.C. 2744.03(A)(5) extends immunity only to the acts of a political subdivision, and not to the acts of its employees. The appellate court in this case also determined that a genuine issue of material fact existed regarding whether a freshman

baseball coach acted with a malicious purpose, in bad faith, or in a wanton and reckless manner despite the fact that no such allegations had been presented in the pleadings.

{¶ 3} We reverse this erroneous decision of the court of appeals and answer the certified question by stating that in accordance with R.C. 2744.03(A)(5), a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining how to use equipment or facilities unless that judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, because a political subdivision can act only through its employees.

{¶ 4} On April 29, 2002, while preparing for an away baseball game in Girard, 15–year–old Jeffrey Elston pitched short-toss batting practice to Joe Ross in a batting cage located in the gymnasium at Howland High School. On the fourth or fifth pitch, a batted ball ricocheted off the screen protecting Elston and struck him in the head. · At that point, Elston went to the locker room and obtained an ice pack, which he applied to his head, and then accompanied the team on the bus to its game at Girard. Although Elston told the coach he could play, Coach Thomas Eschman noticed his slurred speech and impaired balance and advised his parents that he should be taken to an emergency room for medical attention. According to the appellate court, the Elstons transported their son to Trumbull Memorial Hospital, and from there he was taken by helicopter to the Rainbow Children's Hospital in Cleveland, Ohio, where doctors surgically implanted four titanium plates and screws into his head. *Elston v. Howland Local Schools,* Trumbull App. No. 2004–T–0092, 2005-Ohio-4765, 2005 WL 2210705, ¶ 6.

{¶ 5} Elston, by and through his mother, Pamela, thereafter filed a negligence complaint against the school district claiming that it had, through the actions of Coach Eschman, breached its duties to instruct on the proper use of an L-screen, a portable protective netted shield used during batting practice to protect pitchers from being struck by batted baseballs, failed to supervise the use of the batting cage, and also failed to furnish protective helmets for use by pitchers during batting practice. Notably, the amended complaint filed in this case did not allege any conduct involving malicious purpose, bad faith, or wanton or reckless conduct, nor did it present any claim against Eschman individually. In response to the complaint, the school district moved for summary judgment, relying on the immunity defense in R.C. 2744.03(A)(5), and contended that Elston's injury resulted from the exercise of discretion with respect to the use of equipment or facilities, or alternatively pursuant to R.C. 2744.03(A)(3), that it fell within the discretion of the baseball coach with respect to policy-making, planning, or enforcement powers by virtue of the responsibilities of his position as coach of the team. Elston opposed that motion, claiming that Eschman's position

as a freshman baseball coach did not involve the exercise of any discretion with regard to those matters.

{¶ 6} The trial court granted the motion for summary judgment and held that both R.C. 2744.03(A)(3) and (A)(5) provided the school district with immunity from liability. Elston appealed that judgment, asserting that neither R.C. 2744.03(A)(3) nor (A)(5) applied to the school district as a matter of law. In a split decision reversing the grant of summary judgment, the appellate court stated that "[a] plain reading of R.C. 2744.03(A)(5) establishes that immunity is extended only to the acts of a political subdivision, not to the acts of its employees." *Elston,* Trumbull App. No. 2004–T–0092, 2005-Ohio-4765, 2005 WL 2210705, ¶ 32. It further held R.C. 2744.03(A)(3) inapplicable because the school district "failed to show that Eschman's position as baseball coach involved policy-making, planning, or enforcement powers." *Elston,* 2005-Ohio-4765, 2005 WL 2210705, ¶ 31. And the appellate court concluded that genuine issues of material fact also existed regarding whether Coach Eschman acted with a malicious purpose, in bad faith, or in a wanton and reckless manner despite the fact that Elston had not included any such allegations of malice, bad faith, or reckless conduct in the amended complaint. Id. at ¶ 33.

{¶ 7} The court of appeals recognized its decision as being in conflict with decisions from the Second District Court of Appeals in *Pope v. Trotwood–Madison City School Dist. Bd. of Edn.,* Montgomery App. No. 20072, 2004-Ohio-1314, 2004 WL 541121 (injury to a student during an after-school "open gym" session), *Moore v. Southeastern Local School Dist.* (Mar. 29, 1996), Montgomery App. No. 95–CA–23, 1996 WL 139779 (injury to a student during a physical education class), and *Mosely v. Dayton City School Dist.* (July 6, 1989), Montgomery App. No. 11336, 1989 WL 73988 (injury during a physical education class), as well as decisions from the Ninth District Court of Appeals in *Hughes v. Wadsworth City School Dist.* (Mar. 29, 2000), Medina App. No. C.A. 2961–M, 2000 WL 327240 (injury while rollerskating during a physical education class), and from the Twelfth District Court of Appeals in *Thompson v. New Miami Local School Dist.* (Sept. 8, 1998), Warren App. No. CA98–03–051, 1998 WL 568691 (injury to a student in a school gymnasium while unsupervised), and *Harland v. W. Clermont Local School Dist.* (August 1, 1994), Clermont App. No. CA94–01–006, 1994 WL 394958 (injury to student while playing floor hockey in a physical education class).

{¶ 8} As a result, the appellate court certified the following question to us: "Whether a political subdivision's immunity from liability under R.C. 2744.03(A)(5) applies only to the acts of the political subdivision, and not to the acts of the employees of the political subdivision." Though it was poorly worded, we accepted the certified question, as well as a discretionary appeal, to determine

whether a school district may assert the defenses found in R.C. 2744.03(A)(3) and (A)(5) to establish nonliability in a case in which a political subdivision would otherwise be liable according to R.C. 2744.02(B)(4) for negligence caused by its employees occurring in connection with the performance of a governmental function.

{¶ 9} At the outset, we recognize that the dissenting opinion here takes issue with the General Assembly concerning the concept of immunity. We further recognize that the concept is part of the jurisprudence of our state and that the judicial role is to interpret legislative enactments.

{¶ 10} The process of determining whether a political subdivision is immune from liability involves a three-tiered analysis. See *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556, 733 N.E.2d 1141. The first tier provides a general grant of immunity, stating that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). In this case, it is undisputed that Howland Local Schools is a political subdivision as defined in R.C. 2744.01(F), that Eschman is a teacher and baseball coach employed by the school district, who acted within the scope of his employment, and that "[t]he provision of a system of public education" as well as the "operation of any school athletic facility, school auditorium, or gymnasium" are governmental functions pursuant to R.C. 2744.01(C)(2)(c) and (u). Therefore, the general grant of immunity contained in R.C. 2744.02(A)(1) applies in this case.

{¶ 11} The second tier in an immunity analysis focuses on the exceptions to immunity located in R.C. 2744.02(B). Applicable here is the exception found in former R.C. 2744.02(B)(4), Sub.S.B. No. 108, 149 Ohio Laws, Part I, 462, providing that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." The allegations contained in Elston's amended complaint match this provision because a claim sounding in negligence is asserted against Howland Local Schools, arising from an injury that occurred at a school gymnasium used in connection with the performance of a governmental function.

{¶ 12} Finally, in the third tier of the analysis, immunity may be reinstated if a political subdivision can successfully assert one of the defenses to liability listed in R.C. 2744.03. See *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. This case concerns the application of the specific defenses listed in former R.C. 2744.03(A)(3) and (A)(5), Sub.S.B. No. 108, 149 Ohio Laws, Part I, 463, 464, which state:

{¶ 13} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶ 14} " * * *

{¶ 15} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

{¶ 16} " * * *

{¶ 17} "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

### R.C. 2744.03(A)(5)

{¶ 18} The school district asserts that Coach Eschman exercised his judgment and discretion as a baseball coach by instructing his players on how to use the batting cage, the protective L-screen, and other facilities, and maintains that the statute provides it with immunity. Elston, echoing the appellate court decision, contends that R.C. 2744.03(A)(5) extends only to the discretionary actions of a political subdivision—as opposed to actions of the subdivision's employees—because the statute does not contain any reference to the term "employees."

{¶ 19} We have held and it is well recognized that a political subdivision acts through its employees. In *Spires v. Lancaster* (1986), 28 Ohio St.3d 76, 28 OBR 173, 502 N.E.2d 614, we stated, " 'It is undeniable that the state can only act through its employees and officers.' " Id. at 79, 28 OBR 173, 502 N.E.2d 614, quoting *Drain v. Kosydar* (1978), 54 Ohio St.2d 49, 56, 8 O.O.3d 65, 374 N.E.2d 1253.

{¶ 20} Furthermore, teachers and coaches, as employees of a political subdivision, have "wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in" their care. See *Marcum v. Talawanda City Schools* (1996), 108 Ohio App.3d 412, 416, 670 N.E.2d 1067; see, also, *Frederick v. Vinton Cty. Bd. of Edn.*, Vinton App. No. 03CA579,

2004-Ohio-550, 2004 WL 232129, ¶ 43. In *Marcum*, a student suffered injury at the hands of other students when a teacher left a student council meeting of students in her classroom unsupervised to attend a faculty meeting. 108 Ohio App.3d at 414, 670 N.E.2d 1067. The court of appeals held that the Talawanda City School District was immune from liability and determined that the teacher's decision to leave the students unattended was within the scope of her discretionary authority pursuant to R.C. 2744.03(A)(5). *Marcum* at 416, 670 N.E.2d 1067.

{¶ 21} Here, Eschman's coaching decisions reflect the same type of discretion that was exercised in *Marcum*. Eschman provided instruction to pitchers regarding the use of the L-screen as well as general guidance regarding gameday preparations. His direction represents the exercise of his judgment and discretion in the use of equipment or facilities in connection with his position as coach of the baseball team and as an employee of the school district.

### Cases in Conflict

{¶ 22} The cases certified as in conflict support this analysis and fortify this conclusion. In *Pope v. Trotwood–Madison City School Dist. Bd. of Edn.*, Montgomery App. No. 20072, 2004-Ohio-1314, 2004 WL 541121, the Second District Court of Appeals held the school board immune from liability pursuant to R.C. 2744.03(A)(5) in a case involving the death of a student who had hit his head against a wall while playing basketball during an after-school "open gym" session. The court determined that the architects of the gym, acting on behalf of the school district, designed the facility to be used in the manner in which the school had utilized it. Id. at ¶ 15. Moreover, the school's employees exercised discretion in selecting and installing the protective matting on the walls of the gymnasium. Id. at ¶ 19. Thus, the court held the school district immune from liability based upon the discretion exercised through the actions of its employees.

{¶ 23} In another conflict case, *Hughes v. Wadsworth City School Dist.* (Mar. 29, 2000), Medina App. No. 2961–M, 2000 WL 327240, where a student sustained an injury while rollerskating, the Ninth District Court of Appeals held the school district immune and stated that a physical education teacher had not acted recklessly "while preparing for and conducting his physical education class." As in *Pope*, the court applied the provisions of R.C. 2744.03(A)(5) to the actions of the employees of the political subdivision in determining that the school district had immunity. Id.

{¶ 24} *Harland v. W. Clermont Local School Dist.* (August 1, 1994), Clermont App. No. CA94–01–006, 1994 WL 394958, involved an injury to a student sustained while playing floor hockey during a physical education class. There, the Twelfth District Court of Appeals held the school district immune and stated that "the record is devoid of evidence that [the school district] *or its employees* knew or should have known that they were creating an unreasonable risk of harm

to the students." (Emphasis added.) Id. Thus, the appellate court there did not limit the immunity provided by R.C. 2744.03(A)(5) to the political subdivision itself, but rather determined that it applied it to the acts of employees of the political subdivision.

{¶ 25} In contrast with these decisions, the appellate court in this case determined that R.C. 2744.03(A)(5) did not afford immunity to the Howland Local School District, because the language of the statute affords immunity "only to the acts of a political subdivision," and "not to the acts of its employees." See *Elston*, 2005-Ohio-4765, 2005 WL 2210705, ¶ 32. Our purpose in construing statutes is to " 'ascertain and give effect to the legislative intent.' " *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, 835 N.E.2d 692, ¶ 25, quoting *Carter v. Youngstown Div. of Water* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus. Furthermore, "[i]t is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *Mishr v. Bd. of Zoning Appeals* (1996), 76 Ohio St.3d 238, 240, 667 N.E.2d 365.

{¶ 26} The appellate court here has added its own phrases to this statute and unnecessarily manipulated and confused it. Because a school district can act only through its employees, R.C. 2744.03(A)(5) affords a defense to liability. In this instance, Elston's injury resulted from the judgment or discretion of the coach in determining how to use equipment or facilities. No claim is presented suggesting reckless conduct. Thus, the school district successfully asserted this defense in this instance.

### R.C. 2744.03(A)(3)

{¶ 27} Pursuant to the R.C. 2744.03(A)(3) defense, a court must determine whether there are any policy-making, planning, or enforcement powers involved, and then look to see whether the political subdivision's employee had discretion with respect to those powers by virtue of that employee's office or position. Although both R.C. 2744.03(A)(5) and 2744.03(A)(3) concern an employee's discretionary acts, the focus of subsection (A)(3) is that the employee be engaged in policy-making, planning, or enforcement. Also unlike R.C. 2744.03(A)(5), R.C. 2744.03(A)(3) does not have language limiting its grant of immunity. In other words, a political subdivision may assert the immunity defense when an employee who has the duty and responsibility for policy-making, planning, or enforcement by virtue of office or position actually exercises discretion with respect to that power. This immunity exists even if the discretionary actions were done recklessly or with bad faith or malice.

{¶ 28} It makes sense to distinguish legally the two types of immunity. As we explained in discussing R.C. 2943.02, a part of the Court of Claims Act in which

the state waived its immunity with respect to certain torts, "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." *Reynolds v. State, Div. of Parole & Community Servs.* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus.

{¶ 29} Before recognizing the immunity of a political subdivision such as a school district, a court must consider carefully the duties and responsibilities of the employees whose actions are at issue. The Court of Appeals for Butler County, for example, reviewed from several perspectives a case involving an assault on a sixth-grade student by his classmates. *Marcum v. Talawanda City Schools* (1996), 108 Ohio App.3d 412, 670 N.E.2d 1067. In that case, the court held that the teacher's decision to leave the students unattended for a period of time was within the scope of her discretionary authority to determine the level of supervision necessary for the safety of children in her care. Id. at 416–417, 670 N.E.2d 1067. The school district was held to be immune from liability, pursuant to R.C. 2744.03(A)(5), because there was no evidence that the teacher had acted with malice or bad faith. The school district was also immune pursuant to R.C. 2744.03(A)(3) for the actions of the school principal and superintendent who had investigated the incident because both were acting well within the scope of the policy-making, planning, and enforcement powers attendant to their offices when determining how to deal with the assault. Id. at 418, 670 N.E.2d 1067. Finally, the individual employees who were personally sued successfully invoked immunity under R.C. 2744.03(A)(6), as the court found no evidence that the employees had acted or had failed to act with malicious purpose, in bad faith, or in a reckless manner. Id.

{¶ 30} In this case, there is no showing that Coach Eschman's position as baseball coach involved policy-making, planning, or enforcement powers. His position as a baseball coach, without more, does not involve "the exercise of a high degree of official judgment or discretion." *Reynolds,* 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus. We therefore hold that R.C. 2744.03(A)(3) does not apply to Coach Eschman's actions and does not provide the school district with a defense.

{¶ 31} Finally, we recognize that because the amended complaint filed here presented no claims against Coach Eschman, we need not consider any defense he may have been able to assert pursuant to R.C. 2744.03(A)(6). Furthermore, because the amended complaint failed to allege malice, bad faith, or wanton or

reckless conduct, the appellate court strayed well beyond the pleadings and erred in reversing the judgment of the trial court in that regard, and we need not further address that issue.

## Conclusion

{¶ 32} Accordingly, we conclude that pursuant to R.C. 2744.03(A)(5), a political subdivision is immune from liability if the injury complained of resulted from an individual employee's exercise of judgment or discretion in determining whether to acquire or how to use equipment or facilities unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, because a political subdivision can act only through its employees.

{¶ 33} Accordingly, the decision of the court of appeals is reversed and the judgment of the trial court is reinstated.

Judgment accordingly.

MOYER, C.J., WOLFF, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

WILLIAM H. WOLFF JR., J., of the Second Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

**PFEIFER, J., dissenting.**

{¶ 34} "The archaic monarchical notion upon which sovereign immunity is based—'The King can do no wrong'—has been absurdly revised" again. *Haynes v. Franklin,* 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, ¶ 31 (Pfeifer, J., dissenting). See *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring). This time, the new rule is "Nobody when exercising judgment or discretion while working for the King can do wrong."

{¶ 35} "Sovereign immunity—the more they explain it, the more I don't understand it." *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 670, 653 N.E.2d 1186 (Pfeifer, J., dissenting). Why should the state be different from every other entity or person in the state? Especially when our state constitution guarantees that "every person * * * shall have remedy by due course of law." Section 16, Article I of the Ohio Constitution. Especially when our state constitution guarantees that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." Section 16, Article I of the Ohio Constitution. See *Garrett,* 68 Ohio St.3d at 144, 624 N.E.2d 704. When sued for negligence, every other entity or person in the state has to defend itself when a

plaintiff can show a duty, a breach of that duty, that the breach was the proximate cause of harm, and damages. See *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614. Why shouldn't the state or any of its political subdivisions have to defend themselves?

{¶ 36} In this case, it would be exceedingly difficult to prove that a duty was breached. Alas, we will never know because, with its decision today, the court has stated: "The Constitution be damned, we will not allow the King or any person exercising discretion on behalf of the King to be sued." Even though Ohio's citizens have been part of a representative democracy for over 200 years, the King still lives. I dissent.

---

Betras, Maruca & Kopp, L.L.C., and Brian P. Kish, for appellees.

Tomino & Latchney, L.L.C., L.P.A., and Nick C. Tomino, for appellant.

Subashi, Wildermuth & Ballato, and Nicholas E. Subashi, urging reversal for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, Ohio Association of School Business Officials, Ohio Education Association, and Ohio Federation of Teachers.

Thomas C. Drabick, urging reversal for amicus curiae Ohio Association of Public School Employees/AFSCME Local 4, AFL–CIO.