NOBLE et al.

v.

WEST CLERMONT LOCAL SCHOOL DISTRICT et al.

2009-Ohio-4890.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2007 CVC 2057.

Decided July 17, 2009.

Law Offices of Blake R. Maislin, L.L.C., and T. Tod Mollaun, for plaintiffs.

McCaslin, Imbus & McCaslin and Bernard W. Wharton, for defendants.

HADDAD, Judge.

{¶ 1} This matter came before the court on January 22, 2009, pursuant to cross-motions for summary judgment. Upon hearing oral arguments on the motion, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} In the 2004–2005 school year, the plaintiff in this case, James A. Noble Jr., was in the ninth grade in the West Clermont Local School District. More specifically, he was a freshman at Glen Este High School, located in Clermont County, Ohio.[1] During his freshman year at Glen Este, the plaintiff participated on the school's varsity wrestling team, which was coached by the defendant, Nate Lynch.

{¶ 3} The injuries alleged in this case occurred during an intersession class that took place during the 2004–2005 school year. Intersession classes in this

---

1. The court would note that both the complaint and the amended complaint assert that Glen Este High School is located in the city of Cincinnati, Hamilton County, Ohio. However, Glen Este High School is located in Cincinnati, Clermont County, Ohio, and is a part of the West Clermont Local School District.

school district were designed to take place during a two-week period, and the students were required to take one class all day every day for a single class credit. Students were registered for intersession courses by the administration and counselors. Once registration was completed, the teachers of the intersession courses were given a list of the students enrolled in their courses.

{¶ 4} During this particular school year, Nate Lynch taught an intersession course titled History and Application of Martial Arts. An orientation for his class was held one week prior to the beginning of the course, during which a syllabus was distributed along with the class rules. James Noble Jr. signed a copy of the rules and course expectations, indicating that he had read them and that he understood them. The course was structured so that the mornings were spent in the classroom learning the history and development of the different styles of martial arts. The afternoons were spent physically practicing the particular martial art style studied that day. Students in the class were placed in groups according to gender and weight. During the afternoons, the instructors would demonstrate a particular technique, and then the students would practice the technique within their groups. While two students practiced, the remaining students would observe to ensure that the techniques would be performed safely. The instructors would be available to supervise and to answer any questions that the students might have.

{¶ 5} James Noble Jr. was injured on the first day of class, while in a sumo wrestling match with another student. The plaintiff locked his arm under the armpits of the other student and attempted to lift him up and turn him over. As he did, the other student's weight was in the crook of his elbow when it hit the ground, resulting in the plaintiff's elbow becoming dislocated.

## THE LEGAL STANDARD

{¶ 6} In considering a motion for summary judgment, the court will look at the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact.[2] According to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor.[3] "All evidence submitted in connection with

---

2. Civ.R. 56(C).

3. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See also *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made."[4] The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.[5]

{¶ 7} In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?"[6] The moving party cannot discharge its initial burden by making conclusory assertions that the nonmoving party has no evidence to prove its case.[7] The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim.[8]

{¶ 8} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ. R. 56, must set forth specific facts showing the existence of a genuine triable issue."[9] "Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party."[10]

## LEGAL ANALYSIS

{¶ 9} The defendants argue in support of their motion for summary judgment that the West Clermont Local School Board and its employees are immune from liability pursuant to the doctrine of sovereign immunity. The plaintiffs argue in response that sovereign immunity is inapplicable to the facts involved in this case because the plaintiffs did not give consent for their son to participate in the course and because the practice of martial arts is not a governmental function.

---

**4.** *Turner v. Fox,* Butler App. No. CA2003–09–251, 2005-Ohio-677, 2005 WL 406230, ¶ 27, citing *Morris v. First Natl. Bank & Trust Co. of Ravenna* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683.

**5.** *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264.

**6.** *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at ¶ 18, citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123.

**7.** *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

**8.** Id.

**9.** Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

**10.** *Parmore Group v. G & V Invests., Ltd.,* Franklin App. Nos. 05AP–756 and 06AP–1106, 2006-Ohio-6986, 2006 WL 3825259, ¶ 10. See also *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

Therefore, the plaintiffs have filed a cross-motion for summary judgment on the defendants' affirmative defense of sovereign immunity.

{¶ 10} According to Civ.R. 56(C), the court may consider pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Pursuant to Civ.R. 56(C), the following evidence has been presented for the purpose of determining these motions: the pleadings; the deposition of James Alfred Noble Jr., including exhibits, filed August 29, 2008; the affidavit of Nate Lynch, filed September 9, 2008; the deposition of Nate Lynch, including exhibits, filed January 5, 2009; and the affidavit of Kristen Noble, filed January 12, 2009.[11] The court will not consider any other evidence presented.

## West Clermont Local School District Board of Education

{¶ 11} "[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties."[12] If the court were to find that the political subdivision is immune, "the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees."[13] In the alternative, if the political subdivision is not immune, "that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years."[14]

{¶ 12} The process in determining whether a political subdivision is immune involves a three-tiered analysis.[15] "The first tier provides a general grant of

---

11. The court would note that the affidavit of Kristen Noble attached to the plaintiffs' memorandum contra and cross-motion for summary judgment, filed January 6, 2009, was not properly executed. The properly executed affidavit of Kristen Noble was not filed until January 12, 2009.

12. *Curry v. Blanchester*, Clinton App. Nos. CA2008–07–024 and CA2008–07–028, 2009-Ohio-1649, 2009 WL 903837, ¶ 25.

13. Id.

14. Id.

15. *Fields v. Talawanda Bd. of Edn.*, Butler App. No. CA2008–02–035, 2009-Ohio-431, 2009 WL 243102, ¶ 10, citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10.

immunity to political subdivisions regarding acts or omissions of the political subdivision or its employees in connection with a governmental or proprietary function."[16]   "The second tier involves exceptions to immunity located in R.C. 2744.02(B)."[17]   In other words, R.C. 2744.02(A)(1), gives a general grant of immunity, and R.C. 2744.02(B) provides exceptions that take the immunity away. "Finally, under the third tier, immunity may be reinstated if a political subdivision can successfully assert one of the defenses listed in R.C. 2744.03."[18]

{¶ 13} R.C. 2744.02(A)(1) provides, "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."   The court would note that there is no dispute that the school system satisfies the definition of a political subdivision under R.C. 2744.01(F).   Because the school system is clearly a political subdivision, the court finds that the defendants have met their burden under the first tier of the analysis, and the school system and its employees are immune from liability.

{¶ 14} However, under the second tier of the analysis, the school system may lose its immunity if the plaintiffs can prove that one of the exceptions in R.C. 2744.02(B) applies.   R.C. 2744.02(B) provides, "[A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: * * * (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.  * * * (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."[19]

---

**16.**   Id. citing R.C. 2744.02(A)(1).

**17.**   Id. at ¶ 11.

**18.**   Id. at ¶ 12.

**19.**   R.C. 2744.02(B).

{¶ 15} The court finds that the provisions of R.C. 2744.02(B), other than R.C. 2744.02(B)(2) and 2744.02(B)(4), do not apply. R.C. 2744.02(B)(1) applies only to the negligent operation of a motor vehicle, and the incident in this case does not involve a motor vehicle. Further, R.C. 2744.02(B)(3) applies when a political subdivision fails to maintain the public roadways, and the incident did not occur on a public roadway. Finally, R.C. 2744.02(B)(5) applies only when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, and there is no allegation that the Revised Code imposes liability upon the school district for the type of negligence in this case.

{¶ 16} With that being said, the school system is not immune under R.C. 2744.02(B)(2) if the injury was caused by the negligent performance of acts by an employee with respect to "proprietary functions" of the political subdivisions. The plaintiffs argue that the school's employee was involved in a proprietary function because the practice of martial arts is not a governmental function. The defendants argue that the school and its employees were involved in a governmental function because a class was being taught during intercession. It is the defendants' contention that the subject matter of that class is not an operative fact in determining whether the school system is removed from the general grant of immunity.

{¶ 17} A governmental function is defined as "[t]he provision of a system of public education."[20] The defendant, Nate Lynch, testified that intersession was organized so that a student would take a two-week-long course in a specific content area. The students would remain in the same course for an entire school day. He also testified that each teacher was commissioned by the school district to design courses for this purpose. During this particular intersession, Lynch taught History and Application of Martial Arts, which is not a state-mandated course. However, the course would count as a physical education credit, and physical education is required to graduate. Therefore, the court finds that Lynch's teaching of martial arts, which could be considered by some as a badly chosen course for high school students who are inexperienced in the field, nonetheless constitutes the teaching of a physical education course. The court further finds that because physical education is required for graduation and because the course was taught as part of the school's regular calendar, even though during intersession, the teaching of this course constitutes a governmental function, as defined in R.C. 2744.01(C). Consequently, the exception found in R.C. 2744.02(B)(2) is inapplicable because it applies only to proprietary functions.[21] The plaintiffs have failed, therefore, to satisfy their burden under the

---

20. R.C. 2744.01(C)(2)(c).

21. Proprietary function has been defined in R.C. 2744.01(G).

second tier of the analysis as it relates to R.C. 2744.02(B)(2).

{¶ 18} However, the court finds that R.C. 2744.02(B)(4) is applicable in this case because the negligence of the school's employee occurred within or on the grounds of a building that is used in connection with the performance of a governmental function. The court would note that this provision provides that it is applicable only when the negligence is *due to physical defects* of a building used in connection with the performance of a governmental function. There is no allegation in this case that the negligence involved was related to a physical defect in the school building itself. Nevertheless, the Sixth District Court of Appeals, in *Grine v. Sylvania Schools Bd. of Edn.*, Lucas App. No. L–06–1314, 2008-Ohio-1562, 2008 WL 853519, has found the language requiring a physical defect in the building itself to be unconstitutional. "In *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718 [780 N.E.2d 543], ¶ 13–16, the Ohio Supreme court interpreting former R.C. 2744.02(B)(4), effective July 6, 2001, held that political subdivisions are not immune from liability for injuries caused by the negligence of employees of a political subdivision within or on the grounds of a building. The court refused to interpret the statute as providing that the exception is limited to injury caused by physical defects or negligent use of the grounds or buildings. Although the statute was amended in 2003 to add the language italicized, that amendment was declared unconstitutional by the court in a separate case." [22] Without that language, all that is required is that the negligence occur within or on the grounds of a building that is used in connection with the performance of a governmental function. In this case, it is undisputed that the alleged negligence of Lynch occurred on the school grounds in a building owned and maintained by the school district for purposes of providing education. Because this is all that is required, the court finds that the plaintiffs have provided evidence satisfying the second tier of the analysis for removing sovereign immunity.

{¶ 19} In view of the fact that the school system has lost its immunity as a result of R.C. 2744.02(B)(4), the court must determine whether a defense to immunity found in R.C. 2744.03 applies so that immunity is reestablished. R.C. 2744.03(A)(5) provides, "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." [23]

---

22. *Grine,* 2008-Ohio-1562, 2008 WL 853519, at ¶ 56.

23. R.C. 2744.03(A)(5).

{¶ 20} It is a well-recognized principle in Ohio that "a political subdivision acts through its employees." [24] "Furthermore, teachers and coaches, as employees of a political subdivision, have 'wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in' their care." [25] In *Marcum v. Talawanda City Schools* (1996), 108 Ohio App.3d 412, 416, 670 N.E.2d 1067, cited by *Elston,* the teacher left a student council meeting in her classroom unsupervised to attend a faculty meeting. A student, while unsupervised, suffered an injury at the hands of another student. *Marcum* held that the school district was immune from liability and determined that the decision to leave the students in the classroom unsupervised was within the scope of her discretionary authority, pursuant to R.C. 2744.03(A)(5).

{¶ 21} Further, in *Hughes v. Wadsworth City School Dist.* (Mar. 29, 2000), Medina App. No. CA2961–M, 2000 WL 327240, a student sustained an injury while skating in a physical education class. The court applied the provisions of R.C. 2744.03(A)(5) to the actions of the physical education teacher to determine that the school district was immune.

{¶ 22} In *Harland v. W. Clermont Local School Dist.* (Aug. 1, 1994), Clermont App. No. CA94–01–006, 1994 WL 394958, a student was injured while playing floor hockey in a physical education class. The court determined that the school district and its employees were immune from liability because there was no evidence that the school district or its employees knew or should have known that they were creating an unreasonable risk of harm. Again, the court applied R.C. 2744.03(A)(5) to the acts of the employees to determine whether the school district was immune.

{¶ 23} In this case, the West Clermont Board of Education made the decision to require students to enroll in intersession courses. The board then commissioned teachers to design courses within specific content areas for the intersession term. Lynch designed the History and Application of Martial Arts for the purpose of fulfilling the physical education requirement. The evidence shows that Lynch created the course so that students would learn about a particular type of martial arts and then have an opportunity to practice it. The course was set up so that if a student chose not to participate, he or she could choose the alternative assessment for that exercise. The students were given a copy of the Glen Este School Spring Intersession 2005, Information and Course Description packet, as well as a course syllabus and rules. James Noble Jr. signed a document stating that he understood the rules of the course. The students,

---

24. *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 19.

25. Id. at ¶ 20.

during the practice portion of the class, were placed into groups based upon their gender and their size.

{¶ 24} The following schedule was followed on the particular date in question: (1) in the morning, the students learned about the different types of martial arts; (2) midday, the students performed warm-up exercises and were trained in break falls, which are safety techniques used to prevent injury; and (3) at the end of the day, the students talked about the styles of wrestling and got into their groups to practice sumo wrestling. There were two other instructors involved in the class in addition to Lynch. Those instructors were Ken Dicks, who has a black belt in tae kwon do and has studied judo and kendo, and Dustin Bowden, who has a black belt in aikido. The team of three instructors taught the course, and no one individual was in charge. Ken Dicks was actually involved in developing the course, and had helped teach the course the previous year. All three instructors were present when the injury occurred.

{¶ 25} Here, Lynch's teaching decisions reflect the same type of discretion involved in *Marcum, Hughes,* and *Harland.* Lynch provided a course syllabus and course guidelines and rules and instructed the students on the proper way to perform the exercises. He also instructed them on safety maneuvers to prevent injury. Further, he had the assistance of two coaches in instructing the students and supervising the exercises. His actions constitute an exercise of judgment and discretion in the use of school personnel, facilities, and other resources in connection with his position as both teacher and wrestling coach, as well as his position as an employee of the West Clermont School District. Because the school district can act only through its employees and the plaintiff's injuries clearly resulted from the judgment and discretion of a teacher in determining how to use other school personnel, school facilities, and other resources, R.C. 2744.03(A)(5) affords the school system a defense to liability. This is true, according to the statute, unless the school system acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 26} The court would note that a malicious purpose, bad faith, or wanton or reckless behavior have not been presented as claims in this case. Clearly, there are no facts to show that the school district, through Lynch, acted with a malicious purpose or in bad faith. Recklessness, while not presented as a claim, has been argued by the parties; thus, the court feels that is necessary to make a determination on the issue.

{¶ 27} "An actor's conduct 'is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is

necessary to make his conduct negligent. Distilled to its essence, * * * reckless-ness is a perverse disregard of a known risk. Recklessness, therefore, necessarily requires something more than mere negligence. In fact, the actor must be conscious that his conduct will in all probability result in injury.' " [26]

{¶ 28} "Although the determination of recklessness is typically within the province of the jury, summary judgment is appropriate in instances where the individual's conduct does not demonstrate a disposition to perversity." [27] The plaintiffs have argued that the students were not adequately supervised, nor were they properly instructed on the exercises in martial arts. They further argue that they did not sign a consent form giving their son permission to participate in the course. [28]

{¶ 29} The facts, however, when read in a light most favorable to the plaintiffs, show that the students were supervised and were instructed on the exercises that they were to perform. As part of the class, Lynch instructed his students on safety maneuvers that would prevent them from being injured during their exercises in martial arts. Further, the students were provided with a set of safety guidelines and class rules, which all students were required to sign, thus acknowledging that they understood them. Lynch and the other instructors demonstrated the exercises prior to the students' being allowed to participate. Further, the class was taught during previous semesters without injury having occurred. Viewing all of this evidence in a light most favorable to the plaintiffs, the court finds that the school district's actions, through Lynch, were not, as a matter of law, reckless. There has been no evidence presented that Lynch's instructions or teaching methods were performed in disregard for the care and safety of his students. Likewise, there is no evidence that Lynch's decision to proceed without a consent form was made with a perverse disregard of a known risk, or that he was conscious that the decision would ultimately result in harm to the plaintiff.

{¶ 30} The court, therefore, finds that the school's conduct, through Lynch, simply does not demonstrate a disposition toward perversity. The court would note that "most activities in a physical education class contain some inherent element of risk," and "[u]nfortunately, these risks can never be completely eliminated." [29] Therefore, because no evidence has been presented to demon-

---

26. *Fields,* 2009-Ohio-431, 2009 WL 243102, at ¶ 15, quoting *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73–74.

27. Id. at ¶ 16, citing *O'Toole* at ¶ 75.

28. The court would note that Lynch has testified that the plaintiffs did sign a consent form; however, the court, for its analysis, will proceed as if they did not.

29. *Hughes,* Medina App. No. CA 2961–M, 2000 WL 327240, at *3.

strate that the school district, acting through its employee, acted with a malicious purpose, in bad faith, or wantonly or recklessly, the court finds that the school system is immune from liability in this case.

## NATE LYNCH

{¶ 31} In addition to its claims of negligence against the school district, the plaintiffs have also asserted claims against Lynch personally. "When examining immunity pursuant to R.C. 2744 in regards to individual employees of a political subdivision, we do not engage in the three tier analysis."[30] Rather, the court should look only to R.C. 2744.03(A)(6), which provides, "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies: (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."[31]

{¶ 32} The court finds that R.C. 2744.03(A)(6)(a) is not applicable because Lynch's acts and omissions were clearly within the scope of his employment as a physical education teacher at Glen Este High School. Lynch was merely acting pursuant to instructions by his employer and did not choose to teach a martial arts course outside of his employment with the school system. Therefore, the court finds that there is no issue of fact remaining on this issue.

{¶ 33} The court further finds that there is no issue of fact remaining regarding R.C. 2744.03(A)(6)(b). For the reasons previously stated, the court finds that Lynch's actions were not malicious or in bad faith, nor were they performed in a wanton or reckless manner. There has been no evidence presented indicating malice or bad faith, and neither of those issues has been argued.

{¶ 34} The facts relevant to recklessness, when read in a light most favorable to the plaintiffs, show that the students were supervised by three different instructors. Further, they were instructed on the exercises that they were to perform. Lynch also instructed his students on safety maneuvers that would prevent them from being injured during their exercises in martial arts. Additionally, the students were provided with a set of safety guidelines and class rules, which each student signed, acknowledging an understanding of the rules and

---

**30.** *Pearson v. Warrensville Hts. City Schools,* Cuyahoga App. No. 88527, 2008-Ohio-1102, 2008 WL 660856, ¶ 29.

**31.** R.C. 2744.03(A)(6).

guidelines. The facts also show that Lynch and the other instructors demonstrated the proper way to perform the exercises prior to the students being allowed to participate. Further, the class was taught during previous semesters without injury having occurred.

{¶ 35} Viewing all of this evidence in a light most favorable to the plaintiffs, the court finds that Lynch's actions were not, as a matter of law, reckless. There has been no evidence presented that Lynch's instructions or teaching methods were performed in disregard for the care and safety of his students. Further, there has been no evidence presented to show that Lynch's decision to proceed without a consent form was made with a perverse disregard of a known risk or that he was conscious that the decision would ultimately result in harm to the plaintiff.

{¶ 36} The court, therefore, finds that Lynch did not demonstrate a disposition toward perversity when he taught the History and Application of Martial Arts as a physical education course. The court would note that "most activities in a physical education class contain some inherent element of risk," and "[u]nfortunately, these risks can never be completely eliminated."[32] Therefore, because no evidence has been presented to demonstrate that Lynch acted with malicious purpose, in bad faith, or wantonly or recklessly, the court finds that Lynch is immune from liability in this case.

## CONCLUSION

{¶ 37} Based upon the foregoing and the competent, credible evidence before the court, the court finds that the defendants are entitled to summary judgment in this case. While the court believes that martial arts might not be appropriate in the high school setting and is mindful of the serious nature of the injuries sustained, there simply is no genuine issue of material fact remaining on the issue of sovereign immunity. Therefore, construing the evidence most strongly in favor of the plaintiffs, the court finds that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party; thus, the defendants are entitled to judgment as a matter of law. The defendants' motion for summary judgment based on the issue of sovereign immunity is hereby granted. The plaintiffs' motion for summary judgment on the same issue is hereby denied.

So ordered.

---

32. *Hughes*, Medina App. No. CA 2961–M, 2000 WL 327240, at *3.