[Cite as *Herrick v. Richland Cty. Solid Waste Mgt. Auth.*, 2020-Ohio-452.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JOHN HERRICK, ET AL. | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiffs-Appellees | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| RICHLAND COUNTY SOLID WASTE | : | |
| MANAGEMENT AUTHORITY, ET AL. | : | Case No. 18CA131 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                             Pleas, Case No. 2014 CV 00475




JUDGMENT:                    Affirmed




DATE OF JUDGMENT:            February 10, 2020




APPEARANCES:

For Plaintiffs-Appellees                For Defendants-Appellants

J. JEFFREY HECK                         MATTHEW S. TEETOR
One Marion Avenue                       J. STEPHEN TEETOR
Suite 215                               Two Miranova Place
Mansfield, OH  44903                    Suite 700

Columbus, OH 43215-5098

*Wise, Earle, J.*

{¶ 1} Defendants-Appellants, Richland County Solid Waste Management Authority, Richland County Commissioners, and Charles Holmes, appeal the November 27, 2018 order of the Court of Common Pleas of Richland County, Ohio, overruling their motion for summary judgment. Plaintiffs-Appellees are John and Rebecca Herrick.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 31, 2015, John Herrick went to the composting facility operated by Richland County Solid Waste Management Authority to unload a trailer of yard waste. During the unloading process, a grapple attached to a front end loader came down on Mr. Herrick's hand and he sustained injuries.

{¶ 3} On July 28, 2017, Mr. Herrick, together with his wife, filed a complaint against appellants alleging negligence/respondeat superior, breach of duty, recklessness, and loss of consortium. On August 17, 2017, appellants filed a motion to dismiss, claiming immunity under R.C. Chapter 2744. By order filed September 22, 2017, the trial court denied the motion, finding if the front loader in question was the only way the composting facility could operate, then "a malfunction in the machinery could arguably be a defect in the grounds" to overcome the cloak of immunity.

{¶ 4} On September 18, 2018, appellants filed a motion for summary judgment, claiming the composting facility could be operated without the front loader, and the machine did not malfunction. By order filed November 12, 2018, the trial court denied the motion, finding genuine issues of material fact to exist regarding the front loader and the operator of the front loader.

{¶ 5} Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING DEFENDANTS RICHLAND COUNTY SOLID WASTE MANAGEMENT AUTHORITY, RICHLAND COUNTY COMMISSIONERS, AND CHARLES HOLMES IMMUNITY PURSUANT TO OHIO REVISED CODE CHAPTER 2744."

I

{¶ 7} In their sole assignment of error, appellants claim the trial court erred in denying their motion for summary judgment as they are covered by immunity under R.C. Chapter 2744. We disagree.

{¶ 8} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379,

citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 9}   As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.  *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 10} The denial of immunity to a political subdivision under R.C. Chapter 2744 is a final, appealable order pursuant to R.C. 2744.02(C).  *Hubbell v. City of Xenia,* 115 Ohio St.3d 77, syllabus, 2007-Ohio-4839, 873 N.E.2d 878.

{¶ 11} Determining whether a political subdivision is immune from liability requires a three-part analysis.  *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 865 N.E.2d 845, 2007-Ohio-2070.   First, R.C. 2744.02(A) provides broad immunity to political subdivisions.  It is undisputed the Richland County Solid Waste Management Authority is a political subdivision and Charles Holmes is an employee thereof, and the operation of the solid waste facility was a governmental or proprietary function.  Second, it must be determined if an exception applies under subsection (B).  If so, then third, it must be determined whether any of the defenses in R.C. 2744.03(A) apply to reinstate immunity.

{¶ 12}  R.C. 2744.02 governs political subdivisions not liable for injury, death, or loss and exceptions.  Subsection (B) lists exceptions to immunity, and states the following relevant to this case:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶ 13} In *Jones v. Delaware City School District Board of Education,* 5th Dist. Delaware No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22-23, this court discussed the meaning of "physical defects" as follows:

The phrase "physical defect" is not defined in R.C. Chapter 2744. However, in general, courts have held the R.C. 2744.02(B)(4) physical defect exception may apply if the instrumentality that caused appellee's injury did not operate as intended due to a perceivable condition or if the

instrumentality contained a perceivable imperfection that impaired its worth or utility. *Leasure v. Adena Local School District,* 2012-Ohio-3071, 973 N.E.2d 810. * * *

When an instrumentality does not operate as intended (i.e. safely) due to a perceivable condition, it loses its ability to function in a safe manner and may constitute a perceivable imperfection that diminishes the instrumentality's utility or worth. * * *

{¶ 14} R.C. 2477.03 governs defenses and immunities. Pertinent to this case are subsections (A)(5) and (6)(b) which state the following:

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]

{¶ 15} As explained by the Supreme Court of Ohio in *Anderson v. City of Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 705, at ¶ 33-34:

Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. * * *

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. * * * *see also Black's Law Dictionary* 1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm).

{¶ 16} In its order filed November 2018 overruling the motion for summary judgment, the trial court found the following genuine issues of material fact to exist appropriate for jury determination: 1) resolution of conflicting deposition testimony as to whether the front end loader malfunctioned and therefore is a "physical defect" within or on the grounds of county property [R.C. 2744.02(B)]; 2) resolution of whether the county's decisions regarding timely repair of the front end loader and whether or not to train the operator in safe operation involved the exercise of judgment or discretion [R.C. 2744.03(A)(5)]; and 3) resolution of whether the operator of the front end loader acted in

a wanton or reckless manner [R.C. 2744.03(A)(6)(b)].  We concur with the trial court's analysis.

{¶ 17} Mr. Herrick owned a tree trimming/removal business and was a regular customer of the subject composting facility, taking a trailer of yard waste to the facility several times a week in the summer months.  Herrick depo. at 18.  On the day in question, Mr. Herrick arrived at the facility whereupon Mr. Holmes was operating the front end loader.  The two were familiar with each other as Mr. Holmes often unloaded Mr. Herrick's trailer.  *Id.* at 21.  As was the practice on many occasions, Mr. Herrick would loop one of his straps holding the yard waste through one of the claws on the grapple and then hook it down on the bucket.  *Id.* at 20-22.  The yard waste was not secure until the grapple came down.  *Id.* at 20.  After Mr. Herrick steps off his trailer, he signals to the operator to put the grapple down and tighten the load.  *Id.* at 23.  On the day of the incident, Mr. Herrick put his hand on the bucket to steady himself as he stepped off his trailer.  *Id.* at 22, 24.  He had not given Mr. Holmes any signal.  *Id.* at 22-23.  The grapple came down on Mr. Herrick's hand, causing him injuries.  *Id.* at 22, 24-25.

{¶ 18} Mr. Herrick stated a couple of weeks prior to the incident, Mr. Holmes told him "the hydraulics [on the bucket] were acting up, and put a work order in on it to have it looked at."  *Id.* at 30-31.  Mr. Herrick testified right after the incident, Mr. Holmes told him "he did not put clamp down or the grabel (sic) down, but it came down on its own, so that tells me that the hydraulics gave."  *Id.* at 31.

{¶ 19} When Mr. Holmes was hired by the county, he did not receive any training on the front end loader because he already knew how to operate it.  Holmes depo. at 21-22.  He never received any safety training on the front end loader during his employment

with the county. *Id.* at 27. He was not trained on inspecting any of the pieces of equipment before operating them. *Id.* Mr. Holmes explained when unloading a trailer of yard waste, he usually waited "until the guy gives me the signal to tell me what to do, when they get out of the way, if they tell me to lift, that is what I do." *Id.* at 35. Mr. Holmes further explained, "[u]sually I wait until they tell me to lift or either he gets in the truck and pulls out from underneath of it. I raise it up. When I see him, that is when I do what I got to do." *Id.* at 42. On the day of the incident, after Mr. Herrick hooked up the strap, Mr. Holmes did not see him, and the next thing he hears is "someone saying get it up, get it up, and get what up, nothing moved, and I raised the claws up, and I never moved the bucket." *Id.* From the time he put the claws down and Mr. Herrick climbed down off the pile of yard waste and disappeared from his sight, Mr. Holmes never moved any part of the equipment. *Id.* at 45. Mr. Holmes did not report any issues with the equipment that day to management. *Id.* at 57. He did not believe that he ever told Mr. Herrick that the front end loader was not working properly. *Id.* at 49. Mr. Holmes stated "there wasn't nothing going on with the loader, it's in excellent shape, good shape." *Id.* After the incident, Mr. Holmes filled out an incident report wherein he wrote: "John asked me for help to unload his trailer. The up and down sign, and I did, *John went to get off the trailer, I watched him and he got off* and his hand was stuck." (Emphasis added.)

{¶ 20} Rick Rhoades, the compost facility manager, explained it was never the intention of the compost facility to use mechanical equipment to help customers unload their yard waste, it just started as a kindness. Rhoades depo. at 18-19. After Mr. Herrick's injury, using the heavy equipment to help customers unload was stopped because "[w]e know that wasn't a good practice." *Id.* at 19. Training on operating the equipment

amounted to "job site handling" and observation of the operator. *Id.* at 12-13, 15, 21. Every day, a piece of equipment prior to being operated required an overall inspection i.e., gages, hydraulics, fuel, lights. *Id.* at 21-24. Mr. Rhoades could not recollect who might have trained Mr. Holmes to inspect the equipment prior to operation. *Id.* at 26. After the incident, Mr. Holmes reported Mr. Herrick's injury to Mr. Rhoades. *Id.* at 28. Mr. Holmes told Mr. Rhoades that Mr. Herrick had told him "to put them down" and after he did so, Mr. Herrick indicated that he had been injured. *Id.* at 29. Mr. Holmes stated he did not see Mr. Herrick. *Id.* Mr. Holmes did not report any issues with the equipment that day. *Id.* at 33. The front end loader was used on the same day after the incident without a problem. Herrick depo. at 29. An invoice was produced dated eleven days after the incident showing that a lift cylinder from the front end loader was repaired as it was leaking fluid or the piston was broken. Rhoades depo. at 34; Exhibits A and B. Also, a bucket clamp cylinder from the front end loader responsible for hydraulics of the bucket and grapples was honed out and worked on. *Id.* at 34-35. Mr. Rhoades did not have any recollection of anyone reporting problems with the front end loader prior to the incident. *Id.* at 40.

{¶ 21} As argued by appellees in their appellate brief at 6-7, we agree questions exist as to whether the front end loader malfunctioned, constituting a physical defect because the machinery did not operate as intended (i.e. safely) due to a perceivable condition (i.e. hydraulics on the front end loader had been acting up) and thus a mechanical issue could have diminished the worth or utility of the front end loader and its ability to function in a safe manner.

{¶ 22} Questions also exist as to whether any decisions to repair or timely repair any malfunction and to train the operator of the equipment on safety issues were exercised in a wanton or reckless manner, as well as whether Mr. Holmes acted in a wanton or reckless manner.  There is conflicting testimony on whether Mr. Holmes knew about any malfunctions regarding the front end loader, whether he received a signal from Mr. Herrick, whether he knew of Mr. Herrick's location relative to the equipment before moving it, or whether he even moved the equipment at all.

{¶ 23} Upon review, we find the trial court did not err in finding appellants were not covered under the immunity statute and in overruling their motion for summary judgment.

{¶ 24} The sole assignment of error is denied.

{¶ 25} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, J. concur and

Wise, John, P.J. concurs in part and dissents in part.



EEW/db

*Wise, P. J., concurring in part and dissenting in part*

**{¶26}** While I concur with the majority's immunity analysis as to Richland County, I respectfully dissent from that part of the majority opinion that determined that Mr. Holmes is not entitled to immunity under R.C. §2744.03(A)(6).

**{¶27}** The reason for the difference being that under the third tier of the immunity analysis, R.C. §2744.03(A)(6) provides for broader immunity for employees:

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a)  The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b)  The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c)  Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *.

**{¶28}** In this case, there is no allegation that Holmes was acting outside of the scope of his employment.

**{¶29}** Upon review, even considering the inconsistencies in his statements, I find that Holmes actions in operating the front-end loader, including the grappling hook, at most, constitute negligence. I find no evidence these actions were undertaken with malice, bad faith, or in a wanton and reckless manner. Finally, there is no allegation that the Revised Code expressly imposes civil liability on Holmes.

**{¶30}** In conclusion, for the reasons stated above, I would find that Holmes is entitled to immunity based on R.C. §2744.03(A)(6).

**{¶31}** I respectfully dissent from the majority decision.